THE PEOPLE, *ex rel.* Case, *vs.* THE JUDGES OF THE DUTCHESS OYER AND TERMINER.

A court of oyer and terminer has no power to grant a new trial, on the merits, after a defendant has been convicted of a felony.

The case of *The People* v. *Stone,* (5 *Wend.* 39,) overruled.

The oyer and terminer is not a superior court of general jurisdiction.

THE relator was convicted at the November term of the Dutchess oyer and terminer, in 1846, on an indictment for burglary in the second degree. From the testimony on the trial, and facts subsequently discovered, there existed no doubt in the minds of the judges, that the defendant was innocent. His sentence was suspended in November until the oyer and terminer in March, 1847. At that time a case had been made by the prisoner's counsel and served upon the district attorney, and notice given of a motion for a new trial. The argument of the motion was, by consent, fixed for the day when the prisoner was to be brought before the court for sentence. The district attorney moved for sentence. The prisoner's counsel moved, upon affidavits and the case, for the court to grant a new trial on the merits. This motion was opposed by the district attorney, on the ground of a want of power in the court. After hearing

The People *v.* The Judges of Dutchess Oyer and Terminer.

the argument, the court being unanimously of the opinion that a new trial ought to be granted, but doubting their power to grant it, suspended sentence and entered a rule ordering that judgment be suspended until the next oyer and terminer, for the purpose of enabling the prisoner to obtain the opinion of the supreme court, as to the power of the court of oyer and terminer to grant a new trial on the merits, and that in case the supreme court should be of opinion that the oyer and terminer had such power, then that a new trial be granted.

The counsel for the prisoner now, after due notice to the district attorney, asked for the opinion of the supreme court upon the following question : If a prisoner is tried and convicted before a court of *oyer and terminer*, for a felony, have that court a right to grant him a new trial *upon the merits* ?

*G. Dean*, for the relator.

I. The English rule that in no case of felony can a new trial be granted, has no foundation in reason, and has never been established as authority in our courts.   (1.) There is no reason why a man, who has been, by surprise, by failure in proof, or for any of the numerous causes for which new trials are granted in civil suits, should be permitted another opportunity to establish the right, which does not exist and cannot be applied with *more* force for allowing an innocent man who has been wrongfully convicted, the right to assert and prove his innocence by another trial.   A pardon may indeed terminate his imprisonment and restore him to the rights of citizenship, but he is yet a convict, by the unreversed judgment of his peers.   The judges who heard the evidence are best qualified to judge of the propriety of a new trial; and cases may exist in which a new trial should be granted where a pardon would be improper.   Judge Marcy, in the case of *The People* v. *Stow*, (5 *Wend.* 42,) says, "It is a settled rule in England never to grant a new trial in cases of felony and treason.   If by the error of the jury, or the judge, an innocent man is condemned, he is sent to the mercy of the crown for redress.   This mercy is but a miserable relief for the injury he has suffered.   It may save his property

from forfeiture, and himself from the ignominy of the gallows, but the foul blot remains on his reputation. Time does not obliterate it; the grave does not cover it; it is an inheritable curse that must and will be the portion of his posterity. It is mockery to tell a man who has been unjustly convicted that his redress is in a pardon. He feels, and ever will feel, that he has received an incurable wound, from that sword which he in common with his fellow citizens had put into the hands of the magistracy for their protection. The policy in respect to new trials which the English courts have pursued has never been countenanced by our courts, and would never be tolerated by our people." Chief Justice Parker, in 17 *Mass. Rep.* 533, in speaking of the English rule, says: "But whatever reasons may exist in that country for this practice, we are unable to discover any sufficient ground for adopting it here." "If the error arises from the inadvertency of the judge in rejecting or admitting testimony, or from misbehavior of the jury, *or other cause* which would be good ground for a new trial in civil actions, or misdemeanors, justice and consistency of principle would seem to demand that the person convicted should, upon his own motion, have another trial, instead of relying upon the disposition of the court, to recommend a pardon, or on the executive power to grant it. For these reasons, we think there is a power in this court to grant a new trial, on the motion of one convicted of a capital offence, sufficient cause being shown therefor, notwithstanding the English courts are supposed not to exercise such authority. And if this opinion needs support, the case of *John Fries*, who after conviction of treason, was tried a second time, and the case in South Carolina .cited from *Bay's Reports*, are sufficient for this purpose." The case alluded to by Chief Justice Parker is in 3 *Dallas*, 515, and 1 *Bay's Rep.* 372.

(2.) The only American case that seems to recognize the English rule, is the case of *The People* v. *Comstock*, (8 *Wend.* 549,) where the defendant was tried for grand larceny and *acquitted*, and a new trial was asked for by the district attorney. Sutherland, J., in refusing a new trial, cites the English rule, and

seems to admit that to be the rule in this country, without, in any manner, alluding to the decision in the 5th Wendell. It was not necessary to consider that point, and the remarks of Sutherland are mere dicta. In the case before cited from 17 *Mass. Rep.* the learned chief justice, in alluding to the distinction between the cases where the defendant is acquitted or convicted, says " that a prisoner who has been tried for a felony and acquitted, should not be subjected to a second trial for the same offence, seems consistent with the humane principles of the common law, in relation to those whose lives have been once put in jeopardy. But the same humane principles would appear to require, that after a *conviction,* a prisoner should be indulged with another opportunity to save his life, if any thing had occurred upon the trial which rendered doubtful the justice or legality of his conviction. *Nemo vis debet vexari, pro una et eadem causa,* is a maxim of justice as well as of humanity ; and was established for the protection of the subject against the oppressions of government. But it does not seem a legitimate consequence of this maxim, that one who has been illegally convicted should be prevented from having a second inquiry into his offence, that he may be acquitted if the law and evidence will justify an acquittal." Professor Greenleaf of Harvard University, always in his course of lectures, takes occasion to speak of the English rule, as one utterly unjust, and as expressly overruled by the whole weight of American authority. Russell on Crimes, *(vol. 2, p. 726,)* says, that the American rule is to grant a new trial in case of felony, for the same causes as in civil cases or misdemeanors.

II. The only remaining question is, whether courts of oyer and terminer have the power. If not, it is because they are courts of INFERIOR JURISDICTION. But the origin of the court shows that in criminal cases they have general power, "TO HEAR AND DETERMINE TREASONS AND ALL MANNER OF FELONIES, &c." (*See Jacob's Law Dict. Oyer and Terminer.*) The point has been already twice decided in the supreme court of this state. The first case is that of *The People* v. *Townsend,* (1 *John. Cas.* 104.) There the defendant had been convicted in

The People *v.* The Judges of Dutchess Oyer and Terminer.

Dutchess county on an indictment for perjury. The presiding judge was satisfied that the verdict was against evidence. The supreme court advised the Dutchess oyer and terminer to grant a new trial, and admit the prisoner to bail. The second case is that already cited in 5 *Wend.* 39, in which the defendant had been convicted of perjury. Application was made to this court, for its opinion upon the question of the power of the oyer and terminer. Justice Marcy says, " If a court of oyer and terminer had not the power to grant a new trial in any case, on the merits, the defendant is remediless, however erroneous may have been his conviction. I cannot bring myself to consider courts of oyer and terminer as they are organized under our system of jurisprudence *inferior tribunals.* They have not only power, but *exclusive power* to try the highest offences, all offences involving the life of the accused. They award the severest punishments. These are attributes of superior courts. Upon principle and authority I have no doubt but the power to grant a new trial on the merits resides in the courts of oyer and terminer and gaol delivery." The 2 *R. S.* 736, § 21, giving to the defendant the right to take a bill of exceptions, does not deprive him of the right which existed before ; and there are many cases where injustice would be done were that the only remedy. Many cases occur in which the decisions of the court may be correct, but where the jury, from prejudice, may find against evidence, or the prisoner may be taken by surprise, by testimony unexpectedly introduced, but which he can satisfactorily explain.

*W. Eno,* (district attorney of Dutchess county,) for the defendants.

*By the Court,* STRONG, P. J. By the common law of England a new trial could not be granted *on the merits,* by any court, in a case of felony ; nor by an inferior court of limited jurisdiction, in any criminal case. (1 *Ch. Cr. L.* 532 ; 3 *Bl. Com.* 388, *Christian's note* ; 6 *D. & E.* 625, 638 ; 13 *East's Rep.* 416, *n.* 6 ; *The People* v. *Comstock,* 8 *Wend. Rep.* 549.)

The People *v.* The Judges of Dutchess Oyer and Terminer.

The rule must be the same here at present, unless it has been abrogated or altered by some law of the colony of New-York, or act of our state legislature. (*Constitution of* 1777, § 35 ; *of* 1821, *art.* 7, § 13 ; *Const. of* 1847, *art.* 1, § 17.) It is undoubtedly competent for any tribunal to extend, or vary, its practice to accommodate the changed habits, business and wants of the people. But rules of practice apply only to the manner of exercising acknowledged powers ; not to the assumption of new ones. The limits to the action of our judicial tribunals are prescribed by common or statute law, and cannot be extended without the express sanction of our legislature. No judge who regards his own duty, or the good of the people, can be disposed to enlarge the jurisdiction of the court over which he presides, by his own acts. "*Est boni judicus ampliari justiciam, non jurisdictionem.*"

No colonial law was cited, on the argument, nor have we been able to find any, changing the rule which we have mentioned. There were undoubtedly courts of oyer and terminer in the provinces. We have very slight and imperfect accounts of their proceedings ; but in the absence of any evidence to the contrary, it is fair to presume that they adhered to the common law rule of the mother country. Neither has our state legislature passed any act conferring the power of granting new trials, on the merits, either upon the oyer and terminer, or general sessions, in which tribunals our criminal prosecutions are principally conducted. Whenever it has been designed to confer that power upon any tribunal subordinate to the supreme court, the grant has been express ; as in the case of the common pleas. (2 *R. L. of* 1813, 141, § 3 ; 2 *R. S.* 208, § 1, *sub.* 2 ;) and of the superior court of the city of New-York, (*Act of March* 31, 1828, § 5.) The powers of the general sessions have been defined with great precision ; but nothing is stated from which an intent to confer the right to grant a new trial upon that court can be inferred ; although the statutes relative to such court have been revised twice (2 *R. L.* 150, § 2 ; 2 *R. S.* 208, § 5) since it was decided by the supreme court that the general sessions could not grant a new trial on the merits, after verdict. (*The People*

The People *v.* The Judges of Dutchess Oyer and Terminer.

v. *The Justices of Chenango County,* 1 *John. Cas.* 179.) The statutes are equally precise in reference to the oyer and terminer. Their powers are clearly defined, (2 *R. L.* 339, § 15; 2 *R. S.* 205, §§ 29, 30, 31;) but they are no where authorized to grant new trials on the merits. The power to do so is expressly, and for the first time, conferred upon the supreme court on a bill of exceptions to the general sessions, or oyer and terminer, by the revised statutes of 1830. (2 *R. S.* 736, §§ 21, 23, 24, 25, 26, 27; *Id.* 741, § 24.) Then it is confined to cases where the inferior tribunal has committed some error in point of law. This limitation of the power, and the omission to grant it in any other case, or to any other court, are significant to show the intention of the legislature to adhere, in all other respects, to the common law rule.

The decisions of the late supreme court, on the question now under consideration, have not been uniform, and we are at liberty to adopt such rule as we think the law requires, without a material departure from the principle *" stare decisis."* Notwithstanding the change which has taken place in the organization of this court, we feel every disposition to abide generally by the decisions of our predecessors; both from the high respect which we entertain for their judicial character, and from our regard for the principle. But the ablest and best men may err; and if we occasionally overrule an extreme case, we but follow the example of those who have gone before us. In the case of *The People* v. *Townsend,* (1 *John. Cas.* 104,) a new trial was ordered on the merits, in a case of felony. The cause had been tried before the oyer and terminer, and the verdict was against the opinion of the judge who presided on the trial. A *certiorari* had been issued from the supreme court, but the papers had not been returned, and the case was not before the court so as to make its decision compulsory. It was merely advisory; although such is not the purport of the language used in the report. In the case of *The People* v. *Stone,* (5 *Wend. Rep.* 39,) it was decided, expressly, that the oyer and terminer had the power to grant a new trial on the merits, in a case of felony. As we cannot concur in that decision, it is proper that we should state

The People v. The Judges of Dutchess Oyer and Terminer.

our reasons. The learned judge who delivered the opinion of the court places the decision on the grounds that the oyer and terminer is a superior court of general jurisdiction, and that it would be manifestly wrong and oppressive if it could not grant a new trial in favor of one who had been unjustly convicted. With great deference to that learned judge, the hardship arising from extreme cases can never justify the assumption of a new power by any court: neither can the highest judicial tribunal claim a right denied to it at common law, without an express grant from the legislature. But we do not agree that the oyer and terminer is a superior court of general jurisdiction. Those attributes are not very clearly defined or described in the books. We think that a superior court of general jurisdiction must have full cognizance of one, at least, of the principal departments of the law *throughout the state,* and must be free, *in its primary action,* from the control of any other tribunal. Its judgments may be subjected to the supervision and correction of an appellate court, as is the case with the king's bench in England and the supreme court in this state; but (and that is the main distinction) the appellate court cannot act until there has been a decision by the tribunal having original jurisdiction. The house of lords cannot control the action of the king's bench; nor can the court of appeals interfere with the action of this court, until a judgment on the merits has been rendered: and then the appellate tribunal does not try the cause anew, but merely corrects errors in point of law. And if a new trial is necessary, it is had in the court possessing the original jurisdiction over the matter in controversy. But the king's bench in England and the supreme court in this state can, at any time before trial, deprive the oyer and terminer of the cognizance of a cause, by certiorari, and it is then generally tried in the higher court.

In England, the oyer and terminer is so entirely subordinate that their commission is "absorbed and determined," when the king's bench, which is the principal court of criminal jurisdiction known to the laws of that country, sits in the same county. (4 *Bl. Com.* 262; *Jacob's Law Dict.* tit. *King's Bench, II.*)

" The jurisdiction of the king's bench," says Sir William Black-stone, (3 *Com.* 42,) " is very high and transcendant. It keeps all *inferior* jurisdictions within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below." Bacon, in his abridgment of the law, (*title Certiorari, B.*) says, " the courts of chancery and king's bench may award a certiorari to remove the proceedings from any *inferior* court, whether they be of ancient or newly created jurisdiction, and therefore (he adds) it is agreed that the king's bench may award such certiorari to justices in oyer or of gaol delivery." And Chitty remarks, (1 *Cr. L.* 374,) that " it is agreed that the court of king's bench having a general superintendency over all courts of *inferior jurisdiction*, may award a certiorari to remove the proceedings from any of them, except some particular statute or charter invest them with ab-solute [he should have said exclusive] jurisdiction ; and there-fore certiorari lies to justices of oyer and terminer and gaol de-livery, not excepting the old bailey." He cites 1 *Salk. Rep.* 144 ; *Hawk. Pl. C. b.* 2, *c.* 29, § 23 ; 2 *Str. Rep.* 1049 ; and 2 *Ld. Raym. Rep.* 1577. These authorities fully prove that the oyer and terminer is an inferior court, and subordinate to the king's bench in England. By the ordinance of the 15th of May, 1699, the supreme court of the colony of New-York was invested with the jurisdiction of the English king's bench, common pleas, and exchequer " to all intents and purposes whatsoever." This court has at present the same jurisdiction and power. (2 *R. S.* 126, § 1.) That would seem to establish the inferiority of all other courts of law possessing original ju-risdiction in the state. The history of the oyer and terminer previous to the revolution is quite obscure. A bill passed the assembly on the 29th of October, 1683, entitled " An act to settle courts of justice," (*Appendix to R. L. of* 1813, *No.* 4,) purporting to constitute a court of oyer and terminer and gene-ral gaol delivery, with power and jurisdiction " to try, hear and determine all matters, causes and cases, capital, criminal or civil." These powers were certainly very ample, and sufficient to constitute a superior court of general jurisdiction. But it is

doubtful whether the bill ever received the sanction of the governor and council or became a law.  No notice is taken of it, or of any of its provisions, in the ordinance reported by Chief Justice Smith and his associates, and adopted by the governor and council, on the 15th of May, 1699.  If the bill of 1683 ever became a law, the oyer and terminer which it created was converted into the supreme court by the ordinance of 1699; for the jurisdiction and powers of the two tribunals are identical; and the oyer and terminer, after that, was doubtless modelled after the same court in England.  But the powers of the existing oyer and terminer in this state do not in any manner depend upon the colonial system.  They are defined by our statutes, in clear and explicit language.  Those statutes no where constitute them co-ordinate with this court, or exempt them from its control, in the exercise of their original jurisdiction.  Their statutory powers are identical with those expressed in the commissions to similar tribunals in England.  There is no addition. It would seem to follow that if they are inferior to the king's bench in England, they must be inferior to this court in this state.  Their jurisdiction is so far general that it extends to the trial and punishment of every species of offence; but each court is limited to crimes committed in the county where it sits. Besides, a majority of the judges are local officers, and have no jurisdiction except in the county for which they may have been elected.  True, a justice of this court must preside, but the tribunal acquires its character from the majority of its members, who can control its decisions.

The supreme court has uniformly asserted and maintained its superiority over the oyer and terminer, by the removal of cases by certiorari, and the subsequent trial of them at the circuit court.  The practice is now sanctioned by statute.  (2 *R. S.* 732, §§ 82, 83, 84.)  In the case of *The People* v. *Comstock,* (8 *Wend.* 549,) the late supreme court, in effect, overruled their decision in *The People* v. *Stone,* and followed the common law rule.  That being the latest decision on the subject, is of course entitled to the greatest weight.

If the oyer and terminer is an inferior court, then the rule

The People *v.* The Judges of Dutchess Oyer and Terminer.

laid down in the case of *The People* v. *The Justices of the General Sessions of Chenango County*, which I have already cited, clearly applies, and that court has not the power to grant a new trial, on the merits.

There are several reasons why the power to grant new trials, on the merits, should exist in civil, rather than in criminal, cases. In civil actions verdicts are rendered for either party when a reasonable satisfaction as to the truth is produced upon the minds of the jury. The scales of justice are equal; the plaintiff, as well as the defendant, has a right to move for a new trial; as the controversy generally relates to property only, promptness of decision is not generally absolutely essential to effect the ends of justice. And, in cases where the verdicts are against the weight of evidence, if a new trial could not be had for that cause, the unsuccessful party would be remediless; as the appellate courts can only review decisions on points of law. But in criminal cases, the accused cannot be convicted where there is a reasonable doubt, however strong the weight, or decided the preponderance, of the evidence may be against him. The presumption at the outset is in favor of his innocence; the court are his counsel, and in the benign manner of administering our laws, all doubtful questions of law and fact are decided in his favor. Hence there are few convictions against the weight of evidence. In a practice of twenty years, as public prosecutor, I do not now recollect one. In criminal cases, too, if the accused is acquitted, however conclusive the evidence against him may have been, the public are precluded by a provision of the constitution from obtaining a new trial. (*Const. of 1847, art. 4, § 5.*) If the defendant had that privilege it would not be mutual. It is very essential to the due administration of criminal law that merited punishment should be prompt, and reasonably certain. The obstacles in the way, existing under our present rules, (although perhaps necessary,) give great encouragement to criminals. There is a constant hope of escape, either from the difficulties in the way of detection, or through the want of a valid indictment, the indistinct recollection of the witnesses, or the mistakes of the court or

The People *v.* The Judges of Dutchess Oyer and Terminer.

jury, or from misplaced mercy. If to these should be added the chance of obtaining a new trial, after conviction, through a difference of opinion as to facts, between the court and jury, the mischiefs would be greatly increased. Although the evidence might, to an unprejudiced mind, appear to be conclusive against the accused, yet he would always, and his counsel frequently, think otherwise. Motions for new trials would be frequent; different rules would prevail in different counties, without any general controlling power; and the hope of escape from merited punishment would, notwithstanding the conviction, be constant. The law would open so wide a door for escape that it would scarcely be a terror to evil doers. If a verdict is rendered against the accused without sufficient evidence, he can always apply for, and generally obtain, a pardon. True, a pardon does not entirely remove the stain from the record. But if it is published, as it should be, that the governor of the state, and our highest judicial officers whom it is his duty to consult on such occasions, deem the evidence insufficient to warrant the conviction, a pardon, if the power to grant it should be discreetly exercised, would be almost, if not fully, equal to a subsequent acquittal by a jury. If pardons are granted so frequently and freely as to deprive them of all benign effect upon the character of the accused, that is the fault of the persons to whom the power is entrusted, not of the system which may render the occasional exertion of it necessary.

Upon the whole, our opinion is that the court of oyer and terminer has no power to grant a new trial on the merits; and our advice to the court below is to proceed to sentence the accused, pursuant to his conviction.