SUPREME COURT. Dutchess General Term, April, 1857. *S. B. Strong, Birdseye* and *Emott*, Justices.

## THE PEOPLE *v.* JEREMIAH BUTLER.

Under an indictment for manslaughter, in the common law form, the accused may be convicted of manslaughter, as defined in the Revised Statutes, in any degree, *according to* the evidence.

A conviction, by a Court of County Sessions, will not be reversed, on *certiorari,* on the ground that the jury erred on a question of fact.

In order to bring a case within the definition of manslaughter in the first degree, as defined in the Revised Statutes, it is necessary to show that the accused was committing or attempting to commit some other offence than that of intentional violence upon the person killed.(a)

Where, on the trial of an indictment, in the common law form, for manslaughter, the court charged the jury that if they were satisfied, from the evidence, that the deceased had come to her death by reason of blows or injuries inflicted upon her by the defendant, not in any self-defence, nor otherwise excusably or justifiably, they should find the defendant guilty of manslaughter *in the first degree,* the charge was held to be erroneous and the conviction was reversed.

Form of a writ of *certiorari* to remove a cause from a Court of Sessions of a county to the Supreme Court, after verdict and before judgment, pursuant to 2 Revised Statutes, 736, § 27.

THIS was a *certiorari* to the Court of Sessions of Kings county, in which the prisoner had been convicted of manslaughter in the first degree.

The writ of *certiorari* was as follows:

The People of the State of New-York to the Court of Sessions of Kings county, and to Samuel D. Morris, County Judge of said county, and John A. Emmons and Martense Schoonmaker, Justices of Sessions in and for said county:

[L. S.]

We having been informed that one Jeremiah Butler was heretofore, to wit, on the nineteenth day of September, one thousand eight hundred and fifty-six, at a Court of Sessions

(a) Vide *Darry* v. *The People* (2 *Park. Cr. R.,* 606, 634).

held in and for said county, by and before the county judge and justices aforesaid, convicted of manslaughter in the first degree, and we being willing, for certain causes, to be certified of said conviction and of the indictment and judgment or verdict against said Jeremiah Butler, do command you that the said indictment, proceedings, judgment and verdict, with all things touching the same, by whatsoever name the parties may be called therein, you send to the justices of our Supreme Court, distinctly and plainly under your hands and seals, and that you cause this writ and the return thereto to be forthwith filed in the office of the clerk of said county of Kings, after the service of this writ.

Witness, Selah B. Strong, Esq., one of the justices of the Supreme Court, at the city hall, in the city of Brooklyn, this twenty-third day of January, one thousand eight hundred and fifty-seven.

JOHN G. SCHUMAKER,

*District Attorney of Kings county.*

WM. H. CAMPBELL, *Clerk.*

The indictment was as follows:

*Kings County, ss:*

The jurors of the people of the State of New-York, in and for the body of the county of Kings, upon their oath, present: That Jeremiah Butler, of the city of Brooklyn, in said county, on the sixth day of June, in the year one thousand eight hundred and fifty-six, at the city and in the county aforesaid, in and upon one Catharine Butler, in the peace of God and of the said people then and there being, feloniously and willfully did make an assault; and that the said Jeremiah Butler then and there, with the hands and feet of him the said Jeremiah Butler, her the said Catharine Butler, in and upon the head, neck, arms, body and vital parts of her the said Catharine Butler, feloniously and willfully did strike, beat and kick, giving her the said Catharine Butler, by such striking,

beating and kicking as aforesaid, divers mortal wounds, bruises and contusions, in and upon the head, body and vital parts of her the said Catharine Butler, of which mortal wounds, bruises and contusions, she the said Catharine Butler, from the sixth day of June, in the year aforesaid, until the seventh day of June in the same year, at the city and in the county aforesaid, did languish, and languishing did live ; on which last mentioned day, in the year aforesaid, the said Catharine Butler, at the city and in the county aforesaid, of the mortal wounds, bruises and contusions aforesaid, did die.

And so the jurors aforesaid, upon their oaths aforesaid, do say, that he the said Jeremiah Butler, her the said Catharine Butler, in the manner and by the means aforesaid, feloniously and willfully did kill and slay, against the peace of the people of the State of New-York, and their dignity.

R. C. UNDERHILL,<br>
*District Attorney.*

The defendant pleaded not guilty.

On the trial of the cause, in the Court of Sessions, several witnesses were examined, and, at the conclusion of the evidence, the court, among other things, instructed the jury that if they were satisfied from the evidence that the deceased came to her death by reason of blows or injuries inflicted upon her by the defendant, and that such blows were inflicted upon her not in self-defence, nor otherwise excusably or justifiably, they should, in that case, find the defendant guilty of manslaughter in the first degree.

To which instruction, and the whole thereof, the counsel for the defendant then and there duly excepted.

The counsel for the defendant then requested the court to instruct the jury :

1. That the allegations in the indictment do not amount to a charge of manslaughter in the first degree, or in any higher degree than the fourth degree ; and that if the jury

should be satisfied from the evidence that the deceased came to her death by reason of blows or injuries inflicted upon her by the defendant, the jury could not, under the present indictment, convict the defendant of manslaughter in the first degree.

2. That, under the indictment, the defendant cannot be convicted of any higher or greater offence than manslaughter in the fourth degree.

3. That the evidence for the prosecution does not sustain an indictment for, and will not legally warrant a conviction for, manslaughter in the first degree.

To each of which requests the court declined to accede, and refused to charge the jury as requested; and to which decision and refusal the counsel for the defendant did then and there duly except.

The jury found the prisoner guilty of manslaughter in the first degree.

A bill of exceptions having been made, judgment was stayed to await the decision upon the writ of *certiorari.*

*A. Hadden* and *H. A. Moore,* for the prisoner, made the following points:

I. The court erred in instructing the jury that if the evidence showed that the deceased came to her death by reason of the injuries received from the defendant, it was manslaughter in the first degree, unless they were satisfied that the injuries were inflicted in self-defence, or excusably or justifiably. Such an instruction must have been based upon the assumption that such a case would fall within the sixth section of the statute, defining manslaughter, which provides that the "killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to

felony, shall be deemed manslaughter in the first degree." But, in order to bring the case within this section, the crime or misdemeanor in the perpetration of which the killing was effected must be some crime or misdemeanor other than the act which was itself the cause of death : the act for doing which the party is indicted. (*The People* v. *Rector*, 19 *Wend.*, 569; *The People* v. *White*, 24 *Wend.*, 520.)

II. The court erred in refusing to charge the jury that the allegations in the indictment do not constitute a charge of manslaughter in the first degree, or any other than the fourth degree. The allegation of the indictment is, that the defendant, with his hands and feet, inflicted divers injuries upon the person of the deceased, which caused her death, without averring that it was while the defendant was engaged in the perpetration of any other offence, or in a cruel and unusual manner, or with a dangerous weapon, or in the commission of any other trespass or injury to private rights or property; so that if the first point be well taken, there is no other degree of manslaughter under which the indictment can be ranked than the fourth.

III. The court erred in refusing to charge the jury that the evidence would not warrant a conviction for manslaughter in the first degree. The evidence shows conclusively that if the deceased came to her death in consequence of injuries inflicted by the defendant, there is no reason whatever to suppose that the means employed were either cruel or unusual; while from the proved state of intoxication of the deceased, and the language used by the defendant, it is beyond reasonable doubt that the defendant must have been in the heat of passion ; which state of facts is accurately and literally within the statute definition of manslaughter in the fourth degree. (2 *R. S., part* 4, *ch.* 1, *tit.* 2, *art.* 1, § 18.) And, inasmuch as the killing of another by any weapon must involve a trespass and a misdemeanor, unless the killing be excusable homicide, if the facts in the case at bar constitute manslaughter in the first degree, the eighteenth section

referred to can have no application to any conceivable state of facts.

*J. G. Schumaker* (District Attorney), for the people.

*By the Court,* S. B. STRONG, P. J.—The indictment in this case is in the common law form for manslaughter, without specifying any facts to designate the degree, under the provisions of the Revised Statutes. The counsel for the prisoner supposes that the omission is fatal to the validity of the indictment, or that at any rate it does not sufficiently charge the crime of manslaughter in the first degree, and that therefore the conviction in this case, which was for that offence, cannot be sustained.

It was decided by the Court for the Correction of Errors, in the case of *The People* v. *Enoch* (13 *Wend.,* 176), that the alteration in the Revised Statutes relative to what should constitute the crime of murder did not require any change in the form of the indictment. One reason why the indictment should not be changed from the common law form, urged by me on the argument of that cause, was the danger of an acquittal of a person proved to have committed the crime on the ground of variance, particularly when the means used must be conjectural. The danger was evinced in the subsequent case of *The People* v. *White,* where the indictment particularized the charge so as to bring it within one of the three specifications in the Revised Statutes, and the accused, who was found to have been guilty of the crime under another specification, escaped on the ground of variance. (24 *Wend.,* 540.) The principle on which the case of *The People* v. *Enoch* was decided is applicable to cases of manslaughter. The statutes do not expressly require any change in the form of the indictment, nor should there be any where it might facilitate the escape of criminals on technical grounds. Under the common law form, the pri-

prisoner might be convicted of the offence in any degree according to the evidence.

The judge charged the jury that if they were satisfied from the evidence that the deceased had come to her death by reason of blows or injuries inflicted upon her, not in any self-defence, nor otherwise excusably or justifiably, they should find the defendant guilty of manslaughter in the first degree. It appeared, from the testimony of the physicians who conducted a *post mortem* examination, that a large superficial vein had been ruptured, causing effusion of blood on the brain, and that the death had resulted from the consequent compression of the brain. The defendant and the deceased, who was his wife, were both intoxicated, and had a violent quarrel in their room at a late hour in the evening, during which so much violence was used that the woman screamed several times, and their son, who was a small boy, exclaimed, "Pa. don't kill ma!" A lodger in the room immediately over the one occupied by them went into their apartment the next morning, where she found the deceased lying on the floor insensible. There was one cut on her head, which was bleeding, and there were bruises under her ear and on her head. The prisoner said: "Look here! this thing has fell out of bed and cut her head with a hair pin or some other damned thing." Two witnesses, one a cousin of the prisoner and the other not related to him, testified that they went to the room occupied by the prisoner and his wife at about nine o'clock the same evening; that the prisoner was absent but his wife was at home; that when first seen by them she was sitting in a chair; that, when addressed by one of them, she arose and advanced a step, then reeled and fell back on a stove; that they lifted her up and put her on a chair; that she bled from the back of her head, where one of those witnesses saw a cut; that they lifted her on the bed; that she did not speak, and they left her shortly afterwards, and before her husband returned. The physicians spoke of but one cut upon her head, and

both supposed that the effusion of blood from that caused her death. It seems to me, from all this, that it is at least as natural to infer that the death was caused by the woman's intoxication and her fall upon the stove as that it was effected by the violence of her husband, and I am at a loss to discover anything which warranted the jury in their conclusion that the prisoner had killed his wife. However, we cannot reverse the judgment on the ground that the jury made a mistake on a question of fact. That this cannot be done, either by the court before which the trial was had or the tribunal to which the case might be carried on a bill of exceptions, was settled long ago, and we are not at liberty to overturn a rule as old as the common law itself without statutory authority. Others may attempt to do that, but we shall adhere to our own solemn determination, that the rule of the common law must prevail until it is abolished by our own laws. ( *The People* v. *The Dutchess Oyer and Terminer,* 2 *Barb.,* 282.)

The principal question in this case arises on the other exception taken by the counsel for the prisoner to that part of the charge of the court which I have above quoted. The court instructed the jury, in effect, that if the prisoner was guilty of any crime it was manslaughter in the first degree. The Revised Statutes (2 *R. S.,* 661) provide that the killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of any other, while such other is engaged : First. In the perpetration of any crime or misdemeanor not amounting to a felony ; or, Second. In an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at the common law, shall be deemed guilty of manslaughter in the first degree. If the prisoner killed his wife by violent means (and he must have done so, if at all), no doubt he was engaged in the perpetration of an assault and battery, which is a misdemeanor. But that was a part of the act itself which constituted the principal charge. The statute

The People *v.* Butler.

evidently contemplated some other misdemeanor than that which is an ingredient in the imputed offence, otherwise that part of it relating to an attempt to perpetrate a misdemeanor would be wholly nugatory. Where an act becomes criminal from the perpetration, or the attempt to perpetrate some other crime, it would seem that the lesser could not be a part of the greater offence. Derivative character must necessarily spring from a distinct, although it may be a connected source. I agree with Judge Bronson in thinking that, in order to bring a case within the definition of manslaughter in the first degree, it is necessary to show that the accused was committing, or attempting to commit, some other offence than that of intentional violence upon the person killed. ( *The People* v. *Rector*, 19 *Wend.*, 605.) But the statute requires something more than the commission, or the attempt to commit, a crime or misdemeanor in order to constitute an undesigned killing of a human being manslaughter in the first degree. It must be under circumstances which would render the killing murder at the common law. Now, it was never the rule that the undesigned killing of a human being, in the heat of passion, excited by intoxication, by a violent assault and battery (and that was all that could be inferred from the evidence in this case) constituted the crime of murder. Something more was requisite. In order to constitute the crime of murder, where the killing is unpremeditated, and not by a person engaged in the commission of a felony, but simply by assaulting another, the beating must be in a cruel and unusual manner, as where a master corrected a servant with an iron bar, and a schoolmaster stamped on his scholar in a tender part of his body, so that each of the sufferers died. In such cases the danger is so palpable that the act evinces a depraved mind, regardless of human life. There may be instances so strongly marked that the court may assume their character in its instructions to the jury. But they are very rare, and certainly this is not one of them. If the

misdemeanor had been of that distinctive character which would have allowed the application of the provisions of the statute relative to manslaughter in the first degree to the transaction, it would still have been an important question whether the beating was in such a cruel and unusual manner as evinced a depraved mind, regardless of human life. That would have been a question of fact which should have been submitted to the jury with proper instructions as to the law, and should not have been, as it was, assumed by the court.

The conviction must be reversed and proceedings remitted for a new trial.

EMOTT, J., dissented.

Conviction reversed.

---

SUPREME COURT. At Chambers, Syracuse, May 9, 1857. Before *Pratt*, Justice.