MYERS, plaintiff in error, v. PEOPLE.

*Jurisdiction of court of oyer and terminer — case transferred from court of sessions — Burglary in the third degree — what is — "reasonable doubt" — Caption to an indictment.*

A prisoner was arraigned in the court of sessions on an indictment for burglary in the third degree, and pleaded not guilty, and thereupon the court ordered the indictment to be sent to the court of oyer and terminer for trial. An entry was made in the indictment in the words: " Trial of indictment to go over to next court of oyer and terminer." In the clerk's minutes was the entry: " The defendant was arraigned before the court, and by his attorney, E. P. H., plead not guilty. Remanded." At the opening of the trial in the court of oyer and terminer the clerk completed the entry in his minute book by adding the words: " Ordered that the trial of this indictment go over to the next court of oyer and terminer." *Held,* that the indictment was duly sent from the court of sessions, and the court of oyer and terminer had jurisdiction to try the case.

The caption to an indictment sent to the court of oyer and terminer from the court of sessions may be affixed by the clerk before trial in the former court.

On the trial of an indictment for burglary in the third degree it appeared that an entrance had been made to a room above a bank vault, and an attempt had been made to dig down through the floor into the vault. The court charged the jury that it was not necessary that " if the intent be to steal, the prosecution must show an intent to steal enough to amount to grand larceny. It is sufficient for all purposes of this case, if the intention was to steal any amount whatever or property of any value whatever." *Held,* correct.

The court also charged "if you find that the defendant broke and entered into the (upper) rooms with the intention of there digging down, breaking into and entering the vault of the bank below, with intent to steal from the bank, even though he failed in breaking through or effecting an entrance into the vault or bank, he is guilty of burglary in the third degree." *Held*, correct. The court also charged that "the prosecution must prove their case; must convince and satisfy you beyond a reasonable doubt by legal evidence, of the guilt of the defendant, or he is entitled to an acquittal." But the defendant's counsel requested the court to charge "that the evidence must be of such a character as to exclude to a moral certainty every other hypothesis than that of guilt, before they can render a verdict of guilty." The court in reply said: "I decline to charge on that subject except as I have already charged." *Held*, correct.

ERROR to the court of oyer and terminer of Chemung county. The prisoner, Henry Myers, was indicted in the court of sessions of Chemung county for burglary in the third degree, in December, 1873. He was arraigned on the indictment before that court on the 26th of that month, and pleaded not guilty; thereupon the court sent the indictment to the court of oyer and terminer for trial, and such direction was evidenced by an entry then made on the indictment as follows: "Trial of indictment to go over to next court of oyer and terminer." In the minutes of the court, kept by the clerk, in which he entered the proceedings generally, the entry was made as follows: "The defendant was arraigned before the court, and by his attorney, E. P. Hart, plead not guilty. Remanded." Subsequently, and at the opening of the trial of the prisoner in the court of oyer and terminer, February 11, 1874, the clerk made the further or perfected entry in his rough minutes kept by him of the proceedings of the court of sessions, where a blank had been left for the purpose, as follows: "Ordered, that the trial of this indictment go over to the next court of oyer and terminer." The clerk, who was called by the prisoner's counsel and sworn, testified as to these entries, and, among other things, stated that the blank was filled as above stated, in accordance with the directions of the court of sessions. The prisoner's counsel interposed the objection that the court of oyer and terminer had no jurisdiction to try the prisoner, on the ground that the indictment had not been duly sent by order of the court of sessions to the court of oyer and terminer, but remained in the court of sessions. The court overruled the objection, and ruled and decided that the indictment was properly in the court of oyer and terminer,

and that the latter court had jurisdiction to try the prisoner thereon; to which ruling and decision the prisoner, by his counsel, duly excepted.

The prisoner's counsel then objected to the trial of the indictment, upon the ground that there was no caption thereto, and that the indictment without such caption was incomplete as a record from the sessions to the oyer and terminer.

Pending the making of the motion, and while the same was being argued before the court by the prisoner's counsel, the clerk re-affixed a caption to the indictment, the same having been previously affixed by him, and removed by the counsel. The court thereupon overruled the objection, to which ruling the counsel for the prisoner duly excepted. A jury was thereupon impaneled and sworn, when the prisoner's counsel raised objections to the giving of proof under the several counts of the indictment, on grounds stated by him, unnecessary here to be detailed, as no ground of error is now charged or alleged to the ruling of the court in that regard.

It appeared on the trial that on the evening of December 5, 1873, it was discovered that a burglarious entrance had been made down through the floor of the Young Men's Christian Association rooms at Elmira, situate directly over the Second National Bank. Under the floor was a large cavity, in which were found burglars' tools and other articles. Evidence was introduced to connect the tools and articles so found with others found concealed near and in defendant's house in Elmira. The judge charged the jury that "the prosecution must prove their case; must convince and satisfy you beyond a reasonable doubt by legal evidence, of the guilt of the defendant, or he is entitled to an acquittal. But this doubt should be in fact a reasonable doubt, not a mere quibble or excuse, resorted to as a method of escape from the performance of an important duty."

The counsel for the prisoner requested the court to charge "that the evidence must be of such a character as to exclude to a moral certainty every other hypothesis than that of guilt, before they can render a verdict of guilty." The court replied: "I decline to charge on that subject except as I have already charged."

The prisoner's counsel excepted to the following portions of the charge: "It is not necessary, as claimed for the defense, that if the intent be to steal, the prosecution must show an intention to steal

enough to amount to grand larceny.   It is sufficient for all the purposes of this case, if the intention was to steal any amount whatever or property of any value whatever, or in the language of the statute, 'any valuable thing.'"

"It is claimed on behalf of the prosecution that the defendant is guilty under this indictment, if you shall find that he broke and entered the rooms or building of the Young Men's Christian Association with intent to commit a felony — that is, with intent to dig down through the floor of the association rooms into the bank below, with intent to steal in the bank.   And, I charge you that this claim is well founded, and is a correct exposition of the statute. * * * *   Therefore, if you find that the defendant broke and entered into the Association rooms with the intention of then digging down, breaking into and entering the vault of the bank below, with intent to steal from the bank, even though he failed in breaking through or effecting an entrance into the vault or bank, he is guilty of burglary in the third degree, and you can properly convict him under the   * * *   indictment."

The prisoner was found guilty and sentenced to the Auburn State Prison for a term of five years.

*Hart & McGuire,* for plaintiff in error.

*W. L. Dailey,* district attorney, and *John Murdoch,* for the people.

BOCKES, J.   It may well be claimed, I think, that the court of oyer and terminer had jurisdiction to try the prisoner without any order from the court of sessions, sending the indictment to the former court for trial.   It is supposed that the right to hear and determine all crimes triable in the county, and of general jail delivery, given by the statute to courts of oyer and terminer, is abundant to confer jurisdiction on that court to try indictments found at the sessions, without any order from the latter court. 2 R. S. 205, § 29 ; *People* v. *Gay,* 10 Wend. 509 ; *People* v. *Gen. Sess. N. Y.,* 3 Barb. 144 ; *People* v. *Judges of Dutchess Oyer and Terminer,* 2 Barb. 282 ; *Quimbo Appo* v. *People,* 20 N. Y. 531–543 *seq.*   In two of the cases cited, the powers of the court of oyer and terminer are elaborately discussed.

In *People* v. *Gay,* SUTHERLAND, J., remarks as follows : "It

is correctly observed by the counsel for the people that their power of general jail delivery conferred by the statutes must be considered at least as ample and comprehensive as that conferred upon the justices of assize at common law, by their special commission to deliver jails," and he adds that, in relation to them, "it seems to be well settled that they may try indictments found before other courts, as well as those found before themselves, when the prisoners are in jail." So, in *People* v. *Judges of Dutchess Oyer and Terminer*, STRONG, J., says: "Their statutory powers are identical with those expressed in the commissions to similar tribunals in England." And, in *People* v. *Gen. Sess. of N. Y.*, the same learned judge remarks as follows: "The indictment against the relator was found and presented at the general sessions, * * * and was triable before the oyer and terminer, whether sent there by the sessions, or removed by an order of a justice of this court, or county judge, *or without either.*" In *Quimbo Appo* v. *People*, SELDEN, J., in speaking of the commission of jail delivery, says, that it conferred authority upon the commissioners "to deliver the jail of all prisoners found therein upon their arrival at the place where the court is held, and by virtue of this power, they try all indictments whatever the offense, or wherever found." See, also, 1 Chit. Crim. Law, 142–3; 4 Black. Com. 270. But I do not deem it necessary to hold in this case that the court of oyer and terminer had authority to try the prisoner without the order of the court of sessions sending it to the former court for trial. With such order, the authority of the court is not questioned. The statute expressly declares that the court of oyer and terminer and jail delivery shall have power to try all indictments found in the court of sessions of the same county, which shall have been sent by order of such court of sessions to, and received by, the court of oyer and terminer. 2 R. S. 205, § 30. In this case such order was, as I think, shown to have been granted and duly entered in the records of the court. When the question as regards the existence of the order was raised, the record showed that such order had been made by the court of sessions, 1st, by an indorsement on the indictment; and, 2d, by an order entered in the minutes kept by the clerk of that court. These entries may have been informal, but they were good in substance to show the order of the court, to the effect that the indictment should go to the oyer and terminer. Such is their plain import; and, as pre-

sented by the entries themselves, they appeared as the record of the court of sessions, made by its duly constituted officer. Nor was the record at all impugned by the oral proof, granting that it might be thus impugned. As regards the indorsement on the indictment, the clerk testified that it was made at the time the prisoner was arraigned and entered his plea, and that it was in compliance with the direction of the court; and as regards the order in the clerk's minutes, he testified that, although he actually made the entry of it at the opening of the trial in the court of oyer and terminer, yet it was pursuant to the direction of the court of sessions, and it was entered in the blank left in the minutes therefor.

I am of the opinion that the direction of the court of sessions, evidenced by the indorsement on the indictment, was a substantial compliance with the statute authorizing that court to send the indictment to the court of oyer and terminer, and empowered the latter court to try the prisoner thereon. There is no statute declaring how the minutes of the proceedings shall be kept. The indictment, with the prisoner's plea of not guilty thereon, was a record in that court, and the entry indorsed in conformity with the direction of the court became a part of such record. All were kept and filed together. They became and were the record of the court as to the proceedings in the court against the prisoner for the crime with which he was charged; and together they must stand for what they import.

But let the entry on the indictment be disregarded and go for nought, and it then appeared that the indictment was sent by the order of the court of sessions to the oyer and terminer. This appeared from the entry in the minutes of the clerk of that court. True, the order was not actually entered during the sitting of the court and in its presence, but superadded to the legal presumption afforded by the order itself on its production, duly entered by the proper officer, to the effect that it was directed by the court when in session, we have the uncontradicted testimony of the clerk in verification of the fact. It was not necessary to its validity, that the order or direction of the court should have been actually entered during its session. It was sufficient if the facts as they really existed authorized the entry. *Massey* v. *Johnson*, 12 East, 67 *et seq.*; *Rex* v. *Barker*, 1 id. 186; *Hall* v. *Tuttle*, 6 Hill, 38; *People* v. *Jewett*, 3 Wend. 314, 319. It is a well-settled rule, applicable as

well to criminal cases as to civil, that a party cannot be heard to complain on account of the mere omission of the clerk, when a substantial right is not involved, and especially is this so when the formal omission may be instantly supplied. Here the judicial act had been performed. The decision of the court had been declared. Its direction had been given, and the entry or recording of the decision and direction was but a ministerial duty, devolving on the clerk. So, as was said in substance in one of the cases cited, the formal entry of the order or direction of the court, as actually declared, could be made at any time when necessary for the purpose of evidence.

The considerations above suggested lead to the conclusion that the indictment in this case was properly in the court of oyer and terminer, and that it was competent for that court to try the prisoner thereon.

It is next urged that the indictment was without a caption. The answer to this objection, stated by the counsel for the people, is complete ; that the caption formed no part of the indictment and could be affixed by the clerk at any time with a view to the perfecting of the record. While the indictment remained in the sessions a caption was unnecessary : and it only became requisite on its removal to the oyer and terminer. The affixing of the caption was important only to show the history of the proceedings against the prisoner. The prefixing or attaching of it was but a ministerial act, and it was well performed by the clerk in this case — if indeed its omission could be urged against proceeding with the trial in the oyer and terminer.

We are now brought to a consideration of the case on the evidence and on the exceptions taken to the judge's charge and his refusal to charge as requested. The evidence on which the prisoner was convicted was, as it seems, purely and entirely circumstantial. It is not before us in detail. Portions of it only are given with a view to present the questions intended to be raised by the exceptions. But as to most of the facts and circumstances, it is stated simply in the case before us, that evidence was given showing their existence or tending to their establishment before the jury. As regards those facts and circumstances, in so far as they are material and necessary to support the verdict of the jury, we must hold them to have been satisfactorily proved.

The case is a remarkable one, resting as it does on a great number of circumstances, many of them apparently insignificant when

considered as isolated facts, but when arranged in logical order and applied to the prisoner, with the view of determining his motives and designs, they form a basis for probabilities leaving no reasonable doubt of his guilt. Certainly the fair deductions from the proof were decidedly against him. The discovery of the implements with which the burglary was evidently attempted, and the proof tending to connect the prisoner with their possession, attempted concealment and use, afforded matters of just and fair consideration for the jury, and their conclusion must be accepted as the truth of the case.

It is supposed by the prisoner's counsel that some facts admitted in evidence were of questionable character, as circumstances pointing to the complicity of the prisoner with the criminal act charged; but I find none so remote and irrelevant as to have demanded their exclusion. The exhibition of the tools before the jury were proper as the case stood on the facts disclosed. *People* v. *Larned,* 7 N. Y. 445; *Mulhada* v. *B. C. R. R. Co.,* 30 id. 372; *Matteson* v. *N. Y. C. R. R. Co.,* 35 id. 491. So, also, was the introduction of the newspapers found with them; as was also the fact of the prisoner's flight from jail; although this latter circumstance, while admissible, was of little significance in this case.

Nor was there any ground for exception to the charge of the judge or in his refusal to charge as requested.

I think the remarks of the learned judge to the jury eminently fair on the facts and sound in law. He stated in explicit terms that the prosecution was bound to prove the case against the prisoner; that if after careful consideration of the case they found that the evidence was consistent with the theory of defendant's innocence, they should not hesitate to acquit him; that unless they were satisfied of his guilt beyond a reasonable doubt on legal evidence he was entitled to an acquittal.

This was equivalent to a charge as requested that the evidence must be of such a character as to exclude, to a moral certainty, every other hypothesis than that of guilt. The learned judge said explicitly that if they found that the evidence was consistent with the defendant's innocence they should acquit him; that they should be satisfied of his guilt beyond a reasonable doubt, or he was entitled to an acquittal. This the judge was not bound to repeat, even in different language. Having fully and correctly stated the law on the subject it was not error to decline further to remark thereon.

Many other exceptions were interposed, but none of them are deemed to present any ground of error, nor are they considered of such importance as to require particular comment.

We are of the opinion that the record discloses no error, and that the conviction and judgment should be affirmed.

*Conviction and judgment affirmed.*