Kings General Term, May, 1848.    *Strong, Morse, and Barculo,* Justices.

The People, ex rel. Hasbrouck, *vs.* The General Sessions of the City of New-York.

Where an indictment has been found at the general sessions, for an offence triable in that court, and the cause is subsequently removed into the oyer and terminer, by an order of a circuit judge, the oyer and terminer has power to order the indictment to be sent back to the general sessions for trial; and this without notice to the accused.

And the general sessions has the power to try such indictment.

The court of oyer and terminer has a discretion to refuse to try such indictments as, in the opinion of the court, may not be proper to be tried therein.

This case came before this court on the return to a writ of prohibition, directed to the general sessions, requiring them to desist and refrain from any further proceedings upon an indictment against the relator, until the further order of this court. It appeared, from the return, that the defendant was indicted at the general sessions for an offence triable in that court; that the cause was removed into the oyer and terminer by an order of the circuit judge of the first circuit. At a subsequent oyer and terminer the indictment was ordered back to the sessions, without any notice to the relator.

*A. Crist,* for the relator, contended that the court of oyer and terminer had no power to send back an indictment which had been ordered up by a circuit judge; and especially without notice to the accused.

*J. McKeon,* (district attorney,) contra.

Barculo, J. The statute under which this cause was removed to the oyer and terminer, is found 2 *R. S.* 731, § 76, and provides that any person against whom an indictment shall be pending in any court of general sessions, may apply to a justice of the supreme court, circuit judge, or supreme court

The People v. The General Sessions of the City of New-York.

commissioner, for an order to remove such indictment to the court of oyer and terminer of the county in which the same may be found.  By the 78th section, the officer to whom such application is made, is required to grant an order for the removal of such indictment, unless it shall appear that the application therefor was not made in due season, or that such removal will produce an injurious delay, or in any way tend to prevent a due prosecution of the indictment.

It seems, from this provision, that the officer is bound to grant the application if it is made in due season, and will not prevent a due and timely prosecution of the indictment.  From this it is contended, on the part of the relator, that the defendant, in an indictment, has a *right* to be tried in the oyer and terminer, and that having removed the indictment into that court, the court has no power to send it back to the sessions.  The powers of the court of oyer and terminer are defined in the 29th and 30th sections of 2 *R. S.* 205.  Among them is the power "to try all indictments found in the court of general sessions of the peace of the same county, or city and county, which shall have been sent by order of such court of general sessions to, and received by, *the said court of oyer and terminer, or which shall have been removed into the said court of oyer and terminer, and which, in the opinion of the said court of oyer and terminer, may be proper to be tried therein.*  The latter clause of this section, I think, gives the court of oyer and terminer a discretion to *refuse* to try such causes as in the opinion of said court may *not* be proper to be tried therein.  And experience teaches that this discretion may properly be exercised in regard to a large number of offences.  If a contrary rule prevailed, it would be impossible for the oyer and terminer, in some of the counties, to do the business that might and probably would be sent to it.  I recollect very well finding nearly fifty indictments for violation of the excise law at the Kings county oyer and terminer, in the fall of 1846, which had been removed thither by the circuit judge of the first circuit; which we could not have tried at the oyer and terminer if we had been disposed to

do so, and which were all forthwith sent back to the sessions, as cases not proper to be tried at the oyer and terminer.

But in this case it is contended that the sessions have no power to proceed on the indictment. The statute, (2 *R. S.* 209, § 7,) empowers the court of general sessions to send " *all indictments for offences triable before them,* against prisoners in jail and others, which shall not have been heard or determined, to the next court of oyer and terminer and jail delivery, to be held in their respective counties, and to be there determined according to law; and if any *such* indictment shall be remitted back, without trial, by the court of oyer and terminer and jail delivery, to the court from which it came, such court may proceed thereon." This section clearly contemplates that indictments may be sent back from the oyer to the sessions, and authorizes the latter to proceed thereon. No statute authority is given to the oyer and terminer to send such cases back, except that which is implied in this section. If the word *sent* is referred to *indictments for offences triable before the sessions,* the statutes will harmonize. This construction will authorize the courts of sessions to proceed on all such indictments triable before them as may be sent back, whether they were sent to the oyer and terminer by order of the sessions or of some officer. With this view of the statutes, there can be no difficulty in the New-York general sessions proceeding with the indictment remitted to them in this case.

A writ of consultation, authorizing the court of general sessions and the public prosecutor to proceed in the matter in question must therefore issue, pursuant to the statute. (2 *R. S.* 588, § 64.)

STRONG, J. The relator contends that the court of oyer and terminer had no power to remit the indictment against him to the general sessions, and asks for a writ of prohibition, to protect him from the embarrassments of a threatened trial before a tribunal which has no longer cognizance of his case. This writ was originally framed principally for the purpose of confining inferior courts within " the limits and bounds" of their

several jurisdictions, in order to preserve (as the old books say) " the ease and quiet of the subject ;" but it seems to be equally proper and necessary, where such ·courts had jurisdiction originally but have lost cognizance of the matter by reason of some special proceeding. There can be no doubt but that the general sessions is an inferior tribunal, and as such subject to the control of this court, when a proper case is presented for its interference.

The indictment against the relator was found and presented at the general sessions, and as it was for the crime of obtaining money under false pretences, was triable in that court. (2 *R. S.* 135, § 5, *subd.* 2. *Idem*, 145, § 44.) It was also triable before the oyer and terminer, whether sent there by the sessions, or removed by an order of a justice of this court, or county judge, or without either. (1 *Chit. Cr. L.* 119. *The People* v. *Gay*, 10 *Wend. Rep.* 509.) The object of the statute authorizing the order of removal was not to confer jurisdiction upon the oyer and terminer, but to remove the case from the action of the sessions until the defendants could have an opportunity of being heard before the higher court. The removal was, however, evidently designed to be temporary, and probably principally for the purpose of expediting the trial, and not permanent. The order authorized by the statute, (2 *R. S.* 612, § 79,) is that the indictment be removed to, and the defendant therein tried at, the *next* court of oyer and terminer to be held in the county. It would seem from this that if the next oyer and terminer should refuse to try, or retain the indictment, the public prosecutor would have a right to bring it again before the sessions which had the requisite jurisdiction to try the offence.

The legislature could never have designed to authorize a single justice of this court, or an inferior judge, to coerce the oyer and terminer to proceed in the trial of a case when the judges of that court should think that the public good would require, and the rights of the accused would be as well protected by, a trial in the sessions ; and that too when the order of the justice or judge, so long as he had jurisdiction, could not be

overruled by this court. There is nothing in the statute rendering it obligatory upon the higher courts to proceed to a trial, nor to deprive them of the discretionary power which they generally have in cases brought before them. On the contrary, another statute (2 *R. S.* 132, § 30,) provides that courts of oyer and terminer shall have power to try all indictments removed into such courts, *which in their opinion may be proper to be tried therein.* This provision was not included in the act relative to those courts in the revision of the laws in 1813, but was first inserted in the revised statutes of 1830, after the passage of the act authorizing the removal of indictments, (*Laws of* 1823, *p.* 41,) and was undoubtedly designed to apply to cases which might arise under that act. There are many reasons why the courts of oyer and terminer should have and exercise a discretion on this subject. The causes which induced the order may be of a temporary character, and no longer exist; or there may not be time to try the case during the sitting of the court, and yet it may be very essential, either to the public or the party accused, that a trial should be had before another sitting of the court. And so too the considerations that influenced the judge may deservedly have no weight with the court. If courts of oyer and terminer are not compelled to try all indictments, removed under the act, the question arises whether they must not, *ex necessitate,* have the power to send such as, in their opinion, are not proper to be tried therein, and which, for that reason, they refuse to try, to the only other tribunal before which they can be tried. It is clear that they have the power to remit those found at, and sent to them by, the sessions; as the latter court is expressly authorized to try such cases. (2 *R. S.* 136, § 7.) That power is not expressly conferred upon the oyer and terminer by any statute, but the act last quoted evidently proceeds upon the supposition that it exists—that it is inherent in those courts. There is no reason why they should not, and do not, possess the same power equally in both classes of cases. Courts of general sessions are nowhere prohibited from proceeding to trial in those cases, after the adjournment of the oyer and terminer, which may sit

next after the order is made.    They have general jurisdiction, and unless that is expressly taken away, it seems clear that they have a right to exercise it.

My opinion is in accordance with the practice which has generally prevailed; and the uniform decision of the learned judges who have presided at our courts of oyer and terminer, is entitled to great weight.

I am clearly of the opinion that the defendants have cognizance of the indictment against the relator; and concur with my brother Barculo in considering this a proper case for the issuing of a writ of consultation.

MORSE, J., concurred.

Writ of consultation ordered.

